UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ETHAN CROTEAU,                    *
                                 *
              Plaintiff,          *
                                 *
         v.                       *
                                 *      Civil Action No. 19-cv-12171-ADB
MITEK INC.,                       *
              Defendant.          *
                                 *
                                 *
                                 *

**MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO AMEND AND REMAND**

BURROUGHS, D.J.

        Plaintiff Ethan Croteau ("Plaintiff") filed this action against Defendant MiTek Inc.

("Defendant") alleging five causes of action relating to Defendant's termination of Plaintiff's

employment, including breach of contract, breach of the covenant of good faith and fair dealing,

intentional inference with a contract, unreasonable restraint of trade, and retaliation in violation

of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H, 11I.  [ECF

No. 1-1 ¶¶ 111–42].  Presently before the Court is Plaintiff's combined motion to amend and

remand, [ECF No. 14], which seeks to add claims, join parties, and amend existing claims, see

[id.].  For the reasons set forth below, Plaintiff's motion, [ECF No. 14], is GRANTED in part

and DENIED in part.

I.      **BACKGROUND**

        A.      **Factual Background**

        A brief overview of Plaintiff's allegations is drawn from Plaintiff's proposed amended

complaint ("PAC").  See [ECF No. 14 at 5 ("PAC")].  "For the purposes of [this] motion[], the

Court assumes the facts in the proposed amended complaint are true." Brooks v. Citizens Bank of Mass., No. 19-cv-12231, 2020 U.S. Dist. LEXIS 28988, at *1 (D. Mass. Feb. 20, 2020) (citing A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 79 (1st Cir. 2013)).

From September 2006 to January 2017, Plaintiff was employed as a software developer and engineer by Wrightsoft, Inc., a company founded and run by William Wright ("Wright"). [PAC ¶¶ 12–14, 28]. In January 2017, Defendant, through its holding company, MiTek Holdings, Inc., acquired all of Wrightsoft's stock, but continued to run the company under the name Wrightsoft. [Id. ¶¶ 28, 34]. In addition, Plaintiff continued to report to Wright. [Id. ¶ 43]. When Wrightsoft was acquired, Defendant asked Plaintiff to sign a non-compete agreement, which restricted Plaintiff from working for a competitor in any country in which Defendant conducted business for two years after a potential separation from the company. [Id. ¶¶ 31, 36]. Plaintiff was not offered anything in return for entering into the agreement. [Id. ¶ 45]. During his tenure with the company, Plaintiff was promoted and given salary increases, and, though he was not given regular performance reviews, Wright praised Plaintiff's "hard work, dedication, and attention to customer's . . . needs." [Id. ¶¶ 17–19].

In November 2016, Plaintiff was diagnosed with Asperger Syndrome. [PAC ¶ 21]. He informed Wright that same month, [id. ¶ 24], and in September 2017 informed Defendant's human resources ("HR") department that he had Asperger's both by telling an HR contact in person and by entering it into the company's online HR system. [Id. ¶¶ 101–02]. Plaintiff manifests some typical Asperger's symptoms, including "interpreting instructions, suggestions, and commands in literal or hyper-literal ways." [Id. ¶ 26].

In August 2018, Wright asked Plaintiff to begin working on an integration project that would enable Defendant's software tool to function with a third-party registry, RESNET. [PAC

¶ 53].  Wright gave Plaintiff the login credentials for someone that Wright said had agreed to help Defendant with the project and told Plaintiff to access RESNET to learn its architecture. [Id. ¶¶ 54–55].  Plaintiff followed these instructions and also wrote a software program to allow him to download information from RESNET to study.  [Id. ¶¶ 57–58].  Plaintiff kept Wright apprised of his progress on the integration project.  [Id. ¶ 59].  In September 2018, Wright told Plaintiff to delete everything he had downloaded from RESNET.  [Id. ¶ 66].  Plaintiff did so, deleting files from desktop and laptop computers that Defendant had issued him, and telling Wright when he was done.  [Id. ¶¶ 68, 71–73].  Later, Plaintiff learned that Wright had not simply wanted to integrate Defendant's software with RESNET, but had wanted to design a competing product.  [Id. ¶ 69].  When RESNET discovered this, it began investigating Defendant and revoked its software accreditation.  [Id. ¶¶ 76–77].

Defendant then initiated its own investigation, asking Plaintiff to turn over his work and personal devices for forensic analysis and to participate in several teleconferences with Wright and others.  [PAC ¶¶ 78–79].  Plaintiff complied with these requests and cooperated fully in the investigation.  [Id. ¶¶ 80–82, 84].  Throughout the investigation, Wright and Defendant reassigned Plaintiff to other projects and did not allow him to work on a new project that he had been pitched to support as a project manager.  [Id. ¶¶ 87–89, 96].  As the investigation progressed, Plaintiff realized that Defendant suspected that he had gained access to RESNET for an improper purpose.  [Id. ¶ 83].  Defendant showed Plaintiff an affidavit representing that Plaintiff, not Wright, had initiated the plan to gain access to RESNET's data, which Plaintiff refused to sign.  [Id. ¶¶ 85–86].

On August 15, 2019, Plaintiff told HR personnel that he and his wife were close to closing on a real estate purchase.  [PAC ¶ 105].  Four days later, on August 19, 2019, Bonnie

Daniels ("Daniels"), MiTek Industries Inc.'s Senior Vice President of Culture and People

Services, called Plaintiff into a meeting where she informed him that he was being terminated for

violating company policy and exposing the company to potential criminal liability.  [Id. ¶¶ 4,

106–09].  Plaintiff asked Daniels to delay the effective date of his termination, given his pending

real estate closing, but Daniels and/or Defendant refused his request.  [Id. ¶¶ 111–13].  As a

result of his unemployment, Plaintiff's real estate purchase fell through.  [Id. ¶ 114].

### B.     Procedural Background

On September 19, 2019, Plaintiff initiated this action in Middlesex Superior Court, [ECF

No. 1-1 at 5], and on October 21, 2019, Defendant removed the action to this Court, [ECF No.

1].  Thereafter, Defendant asked for and obtained extensions of time within which to respond to

the complaint, [ECF No. 8, 13].  Before Defendant's response was due, Plaintiff filed his

combined motion to amend and remand on November 22, 2019.  [ECF No. 14].  Defendant

opposed, [ECF No. 18], and Plaintiff replied, [ECF No. 21].

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend generally should

be "freely give[n] . . . when justice so requires."  See Fed. R. Civ. P. 15(a)(2); see also Foman v.

Davis, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given

when justice so requires'; this mandate is to be heeded.").  "[E]ven so, [a] district court enjoys

significant latitude in deciding whether to grant leave to amend."  ACA Fin. Guar. Corp. v.

Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008).  "Reasons for denying leave include undue delay in

filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue

prejudice to the opposing party, and futility of amendment."  United States ex rel. Gagne v. City

of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (citing Foman, 371 U.S. at 182); see also United

States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 734–35 (1st Cir. 2007)).  "In determining whether to grant a motion to amend, the Court must examine the totality of the circumstances and 'exercise its informed discretion in constructing a balance of pertinent considerations.'" United States ex rel. Hagerty v. Cyberonics, Inc., 146 F. Supp. 3d 337, 342 (D. Mass. 2015) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30–31 (1st Cir. 2006)).

## III.   DISCUSSION

Plaintiff asserts that amending his complaint to add new claims and to join additional defendants is appropriate as the added claims are sufficiently pled and joinder is proper.  [ECF No. 21 at 1].  Defendant argues that joinder is improper and that the proposed new claims are futile.  [ECF No. 18 at 8].

Plaintiff's PAC would add four new defendants: MiTek Holdings Inc. ("MiTek Holdings," parent company of existing Defendant); MiTek Industries, Inc. ("MiTek Industries," parent company of MiTek Holdings); Daniels; and Wright.  [ECF No. 15 at 2].  Because Wright is a Massachusetts resident, his addition as a defendant in this matter would defeat diversity and the case would need to be remanded to state court.  See [id.; id. at 25]; see also 28 U.S.C. § 1332.

Plaintiff also seeks leave to add four new claims: Count IV, international interference with a contract (employment), against Wright; Count V, wrongful termination, against Defendant; Count VIII, negligent infliction of emotional distress, against Wright and Daniels; and Count IX, negligent supervision and retention, against Defendant and MiTek Industries. [ECF No. 15 at 7].  In addition to adding these new claims, Plaintiff also seeks to amend existing claims to add other parties: Count III, intentional interference with a contract (residential purchase), adding Daniels; Count VI, unreasonable restraint of trade, adding MiTek Holdings;

and Count VII, retaliation in violation of the MCRA, adding MiTek Holdings, MiTek Industries, Wright, and Daniels.  [Id.].[1]

### A.   Futility

Defendant's primary challenge to the motion to amend is that Plaintiff's proposed amendments are futile because they fail to state a claim for relief.  [ECF No. 18 at 10].  "[W]hile motions to amend are liberally granted, a court has the discretion to deny them if it believes that, as a matter of law, amendment would be futile."  Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 792 (1st Cir. 1995) (internal citation omitted).  "The standard for assessing the futility of the amendment is the motion to dismiss standard."  Turnley v. Banc of Am. Inv. Servs., 576 F. Supp. 2d 204, 211 (D. Mass. 2008).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

---

[1] Plaintiff notes that amended Count VI was pled as Count IV in his original complaint.  [ECF No. 15 at 7].

1.      Count VIII: Negligent Inflication of Emotional Distress

Defendant argues that Plaintiff's proposed addition of a negligent infliction of emotional distress claim against Wright and Daniels is futile because the claim is barred by the Massachusetts Worker's Compensation Act ("WCA").  [ECF No. 18 at 11].  Plaintiff contends that the WCA does not bar his claim because Wright was not acting within the scope of his employment and because Daniels is an employee of a different entity than Croteau.  [ECF No. 21 at 3].

"The WCA provides that an employee waives the right to recover for personal injuries against an employer at common law, if the WCA would otherwise provide compensation for the personal injury." Luthy v. Proulx, 464 F. Supp. 2d 69, 76 (D. Mass. 2006) (citing Mass. Gen. Laws ch. 152, § 24).  "Massachusetts courts construe this provision broadly, and the waiver covers intentional and negligent infliction of emotional distress . . . ." Andresen v. Diorio, 349 F.3d 8, 16 (1st Cir. 2003) (citing Hinchey v. NYNEX Corp., 144 F.3d 134, 146 n.7 (1st Cir. 1998)); see Luthy, 464 F. Supp. 2d at 77 ("Negligent infliction of emotional distress is a personal injury for WCA purposes . . . .").  The WCA further limits the liability of individual employees who were acting within the scope of their employment.  Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 365 (D. Mass. 2002) ("The Act not only bars suits for negligence and intentional torts against an employer, but also against co-workers 'if the fellow employee also was acting in the course of employment.'" (quoting Anzalone v. Mass. Bay Transp. Auth., 526 N.E.2d 246, 249 (Mass. 1988)).  Courts have noted that

> [e]ven the fact that an employee may have been acting illegally "will not automatically bring an intentional tort claim out of the class of those torts barred by the Worker's Compensation Act" because "[t]he key remains whether the acts of the offending employer or agent were in the course of the employment relationship and whether she acted in furtherance of the employer's interest."

Cloutier v. City of Lowell, No. 15-cv-12780, 2015 U.S. Dist. LEXIS 166889, at *30 (D. Mass. Dec. 14, 2015) (quoting Boyle v. Bos. Found., 788 F. Supp. 627, 631 (D. Mass. 1992)).

In order to determine whether a defendant acted in the course of their employment when engaging in conduct alleged to have inflicted emotional distress, "[c]ourts must apply an 'objective test which assesses what the employee did and other facts in order to determine whether he acted at least in part for a job-related purpose.'" Cloutier, 2015 U.S. Dist. LEXIS 166889, at *29–30 (quoting Mulford v. Mangano, 636 N.E.2d 272, 276 (Mass. 1994)). Plaintiff has alleged that Wright caused him emotional distress by "attempting to shield himself from liability" for directing Plaintiff's actions, conduct that would be in Wright's self-interest rather than done on behalf of Defendant. [PAC ¶ 185]. This conduct would therefore be outside of the scope of Wright's employment such that the WCA would not bar Plaintiff's claim. C.f. Cloutier, 2015 U.S. Dist. LEXIS 166889, at *29 (dismissing negligent infliction claim as barred by the WCA where court found that defendant "was not acting on her own personal account").

As for Daniels, as Plaintiff notes, she was employed by MiTek Industries, not Defendant. [ECF No. 21 at 4; PAC ¶ 4]. "The workers' compensation statute now permits third party actions by an injured employee 'against all but his immediate insured employer' and fellow employees." Tilley v. Suffolk Constr. Co., No. 94-1770A, 1996 Mass. Super. LEXIS 479, at *3 (Mass. Super. Ct. July 24, 1996) (quoting Searcy v. Paul, 478 N.E.2d 1275, 1278 (Mass. App. Ct. 1985)). "The mere fact of common management and shareholders among related corporate entities has repeatedly been held not to establish, as a matter of law, a partnership, agency or 'joint venture' relationship that renders the corporations a 'single employer'" for purposes of the WCA. Gurry v. Cumberland Farms, Inc., 550 N.E.2d 127, 133 (Mass. 1990) (citation omitted); see Berger v. H.P. Hood, Inc., 624 N.E.2d 947, 950 (Mass. 1993) ("Because American is a

corporate entity separate from Hood, it does not benefit from the exclusivity provision of the Workers' Compensation Act.").  Thus, because Daniels was not employed by Defendant, but was employed by Defendant's parent company, she may be held liable under the WCA.

At this stage, Plaintiff's proposed negligent infliction of emotional distress claim against Wright and Daniels raises a plausible claim for relief, therefore amending the complaint to add Count VIII would not be futile and the motion to add this count is <u>GRANTED</u>.

2.   <u>Count VII: Violation of the MCRA</u>

Defendant claims that Plaintiff has failed to allege facts sufficient to establish that Wright, Daniels, MiTek Holdings, or MiTek Industries violated the MCRA.  [ECF No. 18 at 13]. Plaintiff counters that each of them attempted to intimidate him to prevent him from exercising his First and Fifth Amendment rights in refusing to sign the affidavit.  [ECF No. 21 at 4; PAC ¶¶ 168–78].

Under the MCRA, a plaintiff must prove that "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion."  <u>Meuser v. Fed. Express Corp.</u>, 564 F.3d 507, 516 (1st Cir. 2009) (quoting <u>Bally v. Northeastern Univ.</u>, 532 N.E.2d 49, 51–52 (Mass. 1989)); <u>see</u> Mass. Gen. Laws ch. 12, § 11H.

As Defendant noted in its opposition, this proposed claim suffers from a fatal timing problem and the amendment will therefore not be allowed.  [ECF No. 18 at 15 n.6].  Plaintiff's PAC alleges that after he refused to sign an affidavit about the RESNET incident, Defendant, MiTek Holdings, MiTek Industries, Wright, and Daniels constructively discharged him and created a hostile work environment by demoting and isolating him, and limiting his assignments.

9

[PAC ¶ 171]. Yet both the original complaint and PAC state that these actions were taken beginning in October 2018, when Defendant began investigating the RESNET incident, months before he was asked to sign the affidavit in March 2019. [ECF No. 1-1 ¶¶ 69, 72, 76, 78–80; PAC ¶¶ 78, 81, 85, 87–91]. Plaintiff's claim reverses the order of events to suggest that he was isolated and demoted because of his refusal to sign the affidavit, whereas—as pled—these events predated his refusal and corresponding exercise of his First and Fifth Amendment rights. <u>See</u> [PAC ¶ 171 ("When Croteau refused to provide a false and/or incomplete narrative, MiTek/Wrightsoft and/or the MiTek Parent Companies, Wright, and Daniels constructively discharged him and/or created a hostile work environment . . . .")]. Having failed to plead that MiTek Holdings, MiTek Industries, Wright, and Daniels engaged in conduct that interfered with the exercise of his constitutional rights, Plaintiff's motion to amend Count VII to add these additional parties is <u>DENIED</u> as futile.

3.    <u>Counts III and IV: Intentional Interference with a Contract</u>

Defendant argues that Plaintiff has not alleged that Daniels and Wright acted with actual malice towards Plaintiff and has therefore failed to plead an essential element of these claims. [ECF No. 18 at 16–17]. Plaintiff disagrees, stating that he has alleged facts sufficient to raise an inference of malice. [ECF No. 21 at 8–9].

In order to raise a claim of intentional inference with a contract, a plaintiff must satisfy the following four elements:

> (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.

<u>Dobelle v. Flynn</u>, 12 F. Supp. 3d 274, 296 (D. Mass. 2014) (quoting <u>Blackstone v. Cashman</u>, 860 N.E.2d 7, 12–13 (Mass. 2007)); <u>see</u> <u>Blackstone</u>, 860 N.E.2d at 12 n.9 ("'We have not

10

consistently distinguished' interference torts, and, in general, 'we need not make any such distinction.'" (quoting United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 23 n.6 (Mass. 1990))).  "The improper motive or means required is 'actual malice.'  Actual malice is any 'spiteful, malignant purpose, unrelated to the legitimate corporate interest.'"  Shea v. Emmanuel Coll., 682 N.E.2d 1348, 1351 (Mass. 1997) (internal citation omitted) (quoting Wright v. Shriners Hosp. for Crippled Children, 589 N.E.2d 1241, 1246 (Mass. 1992)).

In his PAC, Plaintiff alleges that Wright asked Plaintiff to engage in work on the RESNET project under false pretenses, then punished Plaintiff by refusing to speak to him and demoting him in an attempt to deflect blame over the RESNET incident.  [PAC ¶¶ 147–52].  In addition, Plaintiff alleges that, as a result of the work he did at Wright's direction, he was fired.  [Id. ¶ 153].  As for Daniels, Plaintiff alleges that she knew about his planned real estate purchase and knew that terminating his employment would result in that purchase falling through.  [Id. ¶¶ 138–39].  Further, Plaintiff alleges that Daniels terminated Plaintiff to shield Defendant from liability, purposefully refused to change the effective date of his termination in order to prevent Plaintiff from purchasing the real estate, and that the termination was in violation of public policy.  [Id. ¶¶ 141, 142, 144].

At this stage, Plaintiff has alleged facts sufficient to state a plausible claim for relief as to both Wright and Daniels.  "A determination of [Wright and Daniel's] motive and state of mind is premature at this stage of the litigation, and, because all reasonable inferences are drawn in favor of the [P]laintiff, []he has adequately met [his] burden of stating a claim for intentional interference with contractual relations."  Orell v. UMass Mem'l Med. Ctr., 203 F. Supp. 2d 52, 68 (D. Mass. 2002).  As a result, Plaintiff's motion to amend to add Daniels to Count III and to add Count IV against Wright is GRANTED.

4.      Count V: Wrongful Termination

Defendant argues that Plaintiff's termination was not wrongful because it was based on Plaintiff's violation of company policy.  [ECF No. 18 at 18–19].  Plaintiff counters that he has plausibly alleged that his termination was wrongful because it was in violation of public policy—namely, his refusal to perjure himself by signing an affidavit that he believed was inaccurate. [ECF No. 15 at 9–10; ECF No. 21 at 9, 11–12].[2]

In Massachusetts, the baseline rule is that employment is at-will, meaning an employer may terminate an employee for any reason (or for no reason at all) at any time.  Murray v. Warren Pumps, LLC, 821 F.3d 77, 89 (1st Cir. 2016).  The Commonwealth recognizes a narrow public policy exception to this rule, however, that protects employees who are terminated for "asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)."  Id. (quoting Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 533 N.E.2d 1368, 1371 (Mass. 1989)).

In his PAC, Plaintiff alleges that he was terminated in violation of public policy when he refused to sign an affidavit because he knew it to be false, thereby refusing to engage in perjury. [PAC ¶ 156(b); ECF No. 21 at 11–12].  Defendant argues that the affidavit, attached as an exhibit to its opposition, [ECF No. 18-1], demonstrates that it did not cast Plaintiff in a false light in connection with the RESNET incident, [ECF No. 18 at 19].  The Court "may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'"  Curran v. Cousins,

---

[2] Plaintiff also states that his refusal to sign the affidavit was equivalent to making an internal report about Wright's allegedly criminal activity.  [ECF No. 21 at 12].

509 F.3d 36, 44 (1st Cir. 2007) (alteration in original) (quoting Watterson v. Page, 987 F.2d 1, 3

(1st Cir. 1993)).  Plaintiff did not address the authenticity of the affidavit provided by Defendant

in his reply.  See [ECF No. 21].  In any case, the Court finds that Plaintiff has plausibly alleged

that he read the affidavit as an inaccurate admission that the actions taken in connection with

RESNET were his own, given the omission of any reference to Wright's alleged part in the

incident.  See [PAC ¶ 156; ECF No. 18-1].

At this early stage in the proceedings, the Court finds that Plaintiff has plausibly alleged a

wrongful termination claim based on a violation of public policy.  The motion to amend to add

Count V is therefore GRANTED.

### 5.   Count IX: Negligent Supervision and Retention

Defendant next argues that Plaintiff's negligent supervision and retention claim is futile

because (1) it is barred by the WCA, (2) such claims are limited to violations of an employer's

duty to the public (not its employees), and (3) Plaintiff fails to allege that Defendant or MiTek

Industries knew of any problems with Daniels or Wright.  [ECF No. 18 at 20].  Plaintiff's reply

solely addresses Defendant's first argument, stating that his claim is not barred by the WCA as to

MiTek Industries because he was not an employee of that entity.  [ECF No. 21 at 14].

#### a.   Negligent Supervision by Defendant

A negligent supervision claim requires a plaintiff to "demonstrate that (1) there was a

duty or standard of care owed to him by [defendant]; (2) [defendant's] conduct constituted a

breach of such duty or violation of such standard of care; (3) [defendant's] employees' conduct

was the proximate cause of his harm; and (4) he suffered actual harm."  Grant v. John Hancock

Mut. Life Ins. Co., 183 F. Supp. 2d 344, 368 (D. Mass. 2002).  However, "Massachusetts law

does not recognize a negligent supervision claim brought by an employee against his or her

employer based on the latter's purportedly negligent supervision of another employee." <u>Mehic v. Dana-Farber Cancer Inst., Inc.</u>, No. 15-cv-12934, 2018 U.S. Dist. LEXIS 227441, at *58 (D. Mass. Aug. 31, 2018); <u>see</u> <u>Hall v. FMR Corp.</u>, 559 F. Supp. 2d 120, 128 (D. Mass. 2008) (stating that negligent supervision is "a cause of action that Massachusetts courts have not recognized in an employee-employer context").  Instead, "the tort is limited to violations of an employer's duty to protect the public at large from the misfeasance of its employees." <u>Id.</u> (quoting <u>Hall</u>, 559 F. Supp. 2d at 128).[3]  Plaintiff's request to add a claim of negligent supervision as to Defendant is therefore <u>DENIED</u> as futile.

b.      Negligent Supervision by MiTek Industries

As the Court has already found with regard to Plaintiff's negligent infliction of emotional distress claim against Daniels, the WCA's exclusivity provision does not prevent Plaintiff from bringing a negligence claim against a third party, MiTek Industries.  <u>See</u> <u>Berger</u>, 624 N.E.2d at 950 ("Because American is a corporate entity separate from Hood, it does not benefit from the exclusivity provision of the Workers' Compensation Act.").

Plaintiff alleges that MiTek Industries "had a duty to supervise Daniels in a manner sufficient to protect Croteau from Daniels and Wright's 'warehousing,' isolation, and constructive discharge of Croteau."  [PAC ¶ 171a].[4]  As Defendant notes, however, Plaintiff alleges only that MiTek Industries breached that duty by failing to institute corrective measures

---

[3] Plaintiff cites <u>Green v. Wyman-Gordon Co.</u>, 664 N.E.2d 808, 813 (Mass. 1996), for the proposition that employees may bring negligent supervision claims against their employers. [ECF No. 15 at 14].  In <u>Green</u>, however, the Supreme Judicial Court affirmed summary judgment on a negligent supervision claim and stated only that a negligent infliction of emotional distress claim against an employer could, in theory, be viable.  664 N.E.2d at 813.

[4] The PAC contains paragraphs with duplicate numbering, therefore the Court has added "a" to the second instance of these paragraphs.

for Daniels' conduct without alleging that MiTek Industries was, in fact, aware of the conduct. [ECF No. 18 at 22]; see [PAC ¶¶ 169a–75a]. "[T]o state a claim for [negligent hiring, retention, and supervision] requires that a plaintiff allege that the employer knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action." Vicarelli v. Bus. Int'l, 973 F. Supp. 241, 246 (D. Mass. 1997) (granting motion to dismiss negligent supervision claim); see Bloomer v. Becker Coll., No. 09-cv-11342, 2010 U.S. Dist. LEXIS 82997, at *27 (D. Mass. Aug. 13, 2010) (citing Vicarelli for the same proposition); RLI Ins. Co. v. Wood Recycling, Inc., No. 03-cv-10196, 2006 U.S. Dist. LEXIS 30596, at *11 (D. Mass. Mar. 30, 2006) (citing Vicarelli for the same proposition); see also Foster v. The Loft, Inc., 526 N.E.2d 1309, 1311 (Mass. App. Ct. 1988) ("The employer's knowledge of past acts of impropriety, violence, or disorder on the part of the employee is generally considered sufficient to forewarn the employer . . . ."). Having failed to allege that MiTek Industries was aware of Daniels' "proclivity to commit the complained-of acts," Plaintiff's motion to amend to add Count IX against MiTek Industries is DENIED as futile. See Vicarelli, 973 F. Supp. at 246.

6.      Count VI: Unreasonable Restraint of Trade

Lastly, Defendant states that Plaintiff's proposed addition of MiTek Holdings to his claim of an unreasonable restraint of trade is futile because no such claim is available at common law in Massachusetts. [ECF No. 18 at 22]. Plaintiff's response in support of this claim cites only to a case from the District of New Jersey that did not involve a claim under Massachusetts law and was brought seeking declaratory judgment. [ECF No. 21 at 14 (citing Stryker v. Hi-Temp Specialty Metals, Inc., No. 11-6384, 2012 U.S. Dist. LEXIS 28414, at *7 (D.N.J. Mar. 2, 2012)

(finding New Jersey common law claim of restraint of trade ripe in a declaratory judgment action))].

"Under Massachusetts law, a restrictive covenant in an employment agreement is enforceable 'only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest.'" Sodexo Operations, LLC v. Abbe, 382 F. Supp. 3d 162, 164 (D. Mass. 2019) (quoting Boulanger v. Dunkin' Donuts Inc., 815 N.E.2d 572, 576–77 (Mass. 2004)). Plaintiff's claim, however, asks the Court to find the agreement at issue unenforceable without requesting a declaratory judgment and without alleging that MiTek Holdings has attempted to enforce the agreement. [PAC ¶¶ 158–67]. Plaintiff may either seek a declaratory judgment against MiTek Holdings that would determine whether the noncompete agreement is unenforceable, or may assert as a defense that the agreement is unenforceable if and when Defendant brings a claim against Plaintiff to enforce the agreement. Until then, the claim is unripe and amendment to add MiTek Holdings to the claim is futile. Plaintiff's motion to amend to add MiTek Holdings to Count VI is therefore DENIED.[5]

### B.     Joinder of Wright

Plaintiff has filed a combined motion to amend and remand, contending that remand is necessary because, with the addition of Wright as a defendant, diversity of citizenship is destroyed and this Court no longer has subject-matter jurisdiction. [ECF No. 14 at 2].

---

[5] Plaintiff cites Massachusetts General Laws ch. 149, § 24L in the PAC, however, that statute is only applicable to noncompetition agreements entered into on or after October 1, 2018. See Mass. Gen. Laws ch. 149, § 24L; Sodexo, 382 F. Supp. 3d at 164 n.1 ("Because the non-compete agreement was executed prior to October 1, 2018, the Massachusetts Noncompetition Agreement Act does not apply." (citing Mass. Gen. Laws c. 149, § 24L)). In his original complaint, Plaintiff alleged that he entered into the noncompetition agreement with Defendant on January 20, 2017. [ECF No. 1-1 ¶ 28].

Defendant responds that Plaintiff has named Wright as a defendant solely to deprive the Court of subject-matter jurisdiction and that Wright is a dispensable party per Federal Rule of Civil Procedure 19(b).  [ECF No. 18 at 26–27].

Under 28 U.S.C. § 1447(e), the Court may exercise its discretion in determining whether to permit or deny the joinder of nondiverse parties.  28 U.S.C. § 1447(e).[6]  The statute provides that "if after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State Court."  28 U.S.C. § 1447(e).  "The permissive language of § 1447(e) makes clear that Congress granted the courts broad discretionary power to permit or deny joinder, even though the decision could divest the court of its jurisdiction and force a remand to state court." Kelley v. Vt. Mut. Ins. Co., 407 F. Supp. 2d 301, 305 (D. Mass. 2005).  In addition,

> [a] court's decision under § 1447(e) does not depend on whether the nondiverse defendant is classified as an indispensable or dispensable party as defined by the Fed. R. Civ. P. 19.  Indeed, "virtually every court confronted with this issue has unanimously agreed that the statute compels a court to focus on whether joinder would be equitable instead of being based on whether a party is indispensable."

Id. (quoting Irizarry v. Marine Powers Int'l, 153 F.R.D. 12, 14 (D.P.R. 1994)); see N.E. Bridge Contractors, Inc. v. Aspen Aerials, Inc., 363 F. Supp. 3d 217, 219 (D. Mass. 2019) ("Although the First Circuit has not addressed the precise issue of Rule 15 amendments post-removal, both the Fourth and Fifth Circuits found that such joinder is to be determined by the 'sound discretion' of the district court and does not require a strict Fed. R. Civ. P. 19(b) analysis for dispensability."); Irizarry, 153 F.R.D. at 14 (stating that § 1447(e)'s "legislative history does in

---

[6] The Court notes that "[t]he doctrine of 'fraudulent joinder', in which a district court can disregard, for jurisdictional purposes, the citizenship of non-diverse defendants at the time of removal, does not apply after a case has been removed."  N.E. Bridge Contractors, Inc. v. Aspen Aerials, Inc., 363 F. Supp. 3d 217, 218 (D. Mass. 2019); see Kauders v. Uber Techs., Inc., No. 16-cv-11659, 2017 U.S. Dist. LEXIS 65912, at *5 (D. Mass. May 1, 2017) (same).

fact support the determination that a party may be joined even if said party is not determined to be indispensable").

When asked to "exercis[e] its discretion under § 1447(e)," a court may consider several relevant factors touching on the equity of joinder, "including: the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." N.E. Bridge Contractors, 363 F. Supp. 3d at 219 (quoting Mayes v. Rapoport, 198 F.3d 457, 462 (4th Cir. 1999)); see also Town of Berkley v. Meridian at Padelford, Inc., No. 07-11649, 2011 U.S. Dist. LEXIS 167309, at *6 (D. Mass. Aug. 23, 2011) (listing factors); Kelley, 407 F. Supp. 2d at 306 (listing factors).

Here, while there may be reason to question why Plaintiff sought to add Wright as a defendant only after removal despite the fact that Plaintiff referenced Wright throughout his original complaint, "at least at this stage, the Court cannot conclude that [Plaintiff] has added [Wright] as a defendant only to destroy federal jurisdiction." Coughlin v. 750 Woburn St. Operating Co., No. 19-cv-10330, 2019 U.S. Dist. LEXIS 112659, *18 (D. Mass. July 8, 2019). In terms of timing, where the parties have not engaged in discovery and the case is in its infancy, Plaintiff has not unduly delayed seeking to amend his complaint and any resulting prejudice to Defendant is minimal. See Traincroft, Inc. v. Ins. Co. of the Pa., No. 14-cv-10551, 2014 U.S. Dist. LEXIS 199623, at *7 (D. Mass. Sept. 5, 2014) ("Furthermore, this case is still at its earliest stages. There has been no scheduling conference, and no discovery has been taken. That renders the present circumstances substantially different from those . . . in which motions to amend came after the deadline for amendment had passed or would require the reopening of discovery or additional rounds of summary judgment."). Finally, the Court has already engaged in a futility

analysis and found that Plaintiff's claims as to Wright are plausible, giving weight to the possibility that Plaintiff would be injured if amendment were not allowed.  See Section III.A, supra.  The Court will therefore exercise its discretion under § 1447(e) to permit joinder and remand to state court.  See 28 U.S.C. § 1447(e).

"Federal courts and commentators have concluded that, under § 1447(e), the joinder or substitution of nondiverse defendants after removal destroys diversity jurisdiction, regardless whether such defendants are dispensable or indispensable to the action."  Casas Office Machs. v. Mita Copystar Am., 42 F.3d 668, 674 (1st Cir. 1994).  Because Wright, like Plaintiff, is a Massachusetts resident, his joinder destroys diversity and this Court's subject-matter jurisdiction.  Thus, Plaintiff's motion to remand, [ECF No. 14], is GRANTED.

IV.     **CONCLUSION**

Accordingly, Plaintiff's combined motion to amend and to remand, [ECF No. 14], is GRANTED in part and DENIED in part.  Plaintiff's motion to amend as to Counts III, IV, V, and VIII is GRANTED.  Plaintiff's motion to amend as to Counts VI, VII, and IX is DENIED.  Plaintiff's motion to remand is GRANTED.  This matter is remanded to state court for further proceedings.

**SO ORDERED.**

August 12, 2020                                                            /s/ Allison D. Burroughs
                                                                                    ALLISON D. BURROUGHS
                                                                                    U.S. DISTRICT JUDGE